A96A1861. SIMMONS v. WEBSTER COUNTY.
(485 SE2d 501)

BEASLEY, Judge.
Condemnee Simmons appeals the condemnation award of $675 in this eminent domain case. Despite the amount of the judgment, a direct appeal lies. *Walker v. Ga. Power Co.*, 177 Ga. App. 493, 494 (339 SE2d 728) (1986).

Webster County filed a petition for condemnation of an easement and right-of-way in, to and over Simmons' land for use as a public road and for the controlling and backing up of water, including the right to back water onto Simmons' land to the full extent water was there prior to July 1994. The plat exhibited with the petition showed a proposed total easement strip of 140 feet in width, which would constitute an extension of the 60-foot easement and right-of-way the county already had. A lake had existed on the land adjacent to the existing easement and right-of-way from 1957 to July 1994, except for a short period in 1970.

The county elected to proceed by the quicker, "simpler and more effective method of condemnation" provided for in OCGA § 22-2-100 et seq. The county wanted the additional easement to 140 feet and the specified additional rights in order to qualify for FEMA and GEMA money to rebuild the road and the dam on which it sat, which had been washed out by a flood in July 1994. It intended to include public parking spaces on the extended easement, so people could fish in the lake when it was restored. The county also planned to install a new drainage control system within the 140-foot easement so it could keep the lake at the July 1994 level.

Simmons was the only named condemnee. He was served and a special master appointed. OCGA §§ 22-2-103 and 22-2-107. A hearing was held, OCGA §§ 22-2-108 and 22-2-109, and the special master filed an award in the form required by OCGA § 22-2-110. He awarded $700 for the property and interests sought to be condemned and

found no consequential damages or benefits. The award was made the judgment of the court the same day it was filed with the court. OCGA § 22-2-111.[1]

Condemnee Simmons appealed to the superior court from that award pursuant to OCGA § 22-2-112 and also filed exceptions to the special master's findings, rulings, and award. These were timely because they were filed within ten days after the award was filed, even though they were filed after the court's judgment. *Sims v. City of Toccoa*, 256 Ga. 368, 370 (349 SE2d 385) (1986). Cf. *Earth Mgmt. v. Heard County*, 248 Ga. 442, 445 (3) (283 SE2d 455) (1981). The judgment was premature but not void. *Styers v. Atlanta Gas Light Co.*, 263 Ga. 856, 858 (1), n. 1 (439 SE2d 640) (1994). Thereafter Simmons filed an answer to the petition, setting out his defenses before the court.

A jury was selected to try the issue as to the value of the property and interest taken and the damage done. OCGA § 22-2-112. Immediately before trial the court considered argument on condemnee Simmons' exceptions to the special master's award and overruled them in toto after refusing to consider evidence as to any of them. The primary contentions Simmons raised at the hearing were that because the county was condemning control over the lake bed it was also taking that land or at least an easement over it and that such a taking was not for a necessary public purpose. The condemnor countered that any damage to Simmons' property adjacent to the 140-foot easement could be considered by the jury in measuring consequential damages, if any.

The jury trial on the value of the taking was held, and the court disallowed any evidence of the value of the lake bed, having ruled that it was not condemned in this proceeding and that the only property at issue was the 140-foot easement for road, slope, and drainage. Based on the evidence and the jury charge of the court, which limited the issue to the fair market value of the additional 1.8 acres in the 140-foot easement and gave no instruction on consequential damages, the jury returned a verdict for $675. This is the amount the county's appraiser had given to the new easement.

1. On appeal, the first enumeration is that the trial court erred in ruling on Simmons' exceptions without hearing any evidence on the non-value issues and by refusing to issue a written order. As to the latter, Simmons cites no authority, and there is no such requirement in the statute governing the special master proceeding or else-

---

[1] Although the court purported to condemn the property for the county in absolute and fee simple title, the judgment did not as a matter of law condemn more than the easement and right-of-way the condemnor sought. *Leach v. Ga. Power Co.*, 228 Ga. 16, 22 (6) (183 SE2d 755) (1971).

where in the Code, compare OCGA § 9-11-52, or in case law construing the special master method of condemnation. It is certainly preferred, but not mandated so long as there is record of the ruling.

Regarding the reception of evidence, the law provides that as to the special master condemnation proceedings, "it shall be desirable to have a judicial ascertainment and judicial supervision of all questions and proceedings connected with the matter." OCGA § 22-2-102.1. As discussed in *Sims,* supra, the law contemplates that the court will hear and determine non-value issues raised by way of timely exceptions. "A special master is authorized to make 'critical determinations' other than value, [cit.], and the only method of correcting any errors a special master may have made is by filing an appeal in the superior court where the action was begun. [Cit.]" *Sims,* supra at 369. "In order to obtain review of the non-value issues determined by the special master, a party must file exceptions with the superior court. . . ." *Styers,* supra at 857 (1).

The premature judgment was in fact abrogated by the trial court, because the court did consider Simmons' exceptions to the special master's resolution of non-value issues and a jury tried the value issue anew. OCGA § 22-2-111 provides that "[u]pon the entry of the award of the special master and the presentation of the award to the judge of the superior court, the judge shall enter a proper order and judgment. . . ." Although this implies the entry of an immediate judgment if construed literally, account must be taken of the ten-day allowance for appeal from the special master's award, to a jury as to value and to the superior court for non-value issues. Generally, then, judgment should not be entered until the time for appeal has expired without entry of an appeal. If an appeal is taken, judgment must be held in abeyance until the appeal is resolved, as it vests the condemnor with the property or other interest condemned upon payment of the award into the court registry. OCGA §§ 22-2-111; 22-2-114; *Zuber Lumber Co. v. City of Atlanta,* 237 Ga. 358, 365 (227 SE2d 362) (1976), criticized on another matter, *Styers,* supra at 859-860.

The Supreme Court in *Styers* noted that the judgment on the non-value issues was entered at one time and the judgment on the value issue was entered later. *Styers,* supra at 858 (1), n. 2. That is appropriate so that the court proceedings do "not hinder or delay in any way the condemnor's work or the progress thereof." OCGA § 22-2-112. This serves the purpose of the special master method of condemnation, which is stated in OCGA §§ 22-2-101 and 22-2-102. But it is error to enter a final judgment of condemnation without passing on timely filed exceptions to the special master's award. *City of Atlanta v. Turner Advertising Co.,* 234 Ga. 1, 3 (214 SE2d 501) (1975).

The court was not required to conduct an evidentiary hearing on the exceptions, because that would allow new evidence which was not

before the special master or a repetition of evidence which should have been preserved by a transcript. Insofar as Simmons excepted to findings of the special master, the court was unable to consider the merits because there was no transcript of the special master hearing presented and no written findings other than as required by OCGA § 22-2-110. Compare *Sims*, supra. See also *Wrege v. Cobb County*, 186 Ga. App. 512, 514 (2) (367 SE2d 817) (1988), where the record showed that the condemnees raised all legal issues in the proceeding before the special master, who orally ruled on them; and *Leach*, supra at 18-21, where the court had a report of the special master stating rulings made on certain motions and objections.

As in *Beck v. Cobb County*, 180 Ga. App. 808, 810 (350 SE2d 818) (1986), the exceptions were not properly preserved for review as to the non-value issues. In *Beck* the condemnees did not file exceptions but simply appealed the case " 'in its entirety' " and in such manner sought to present the non-value issues to the superior court. Id. at 808. In Simmons' case, he filed exceptions but did not preserve a record of rulings which the court could review. It is to be a de novo hearing before the superior court on the exceptions, but the non-value issues must have been raised and ruled on by the special master and preserved for the review of exceptions. *Wrege*, supra. The trial court cannot rule on what *Styers* describes as the "exceptions to the special master's resolution of non-value items," supra at 859 (2), unless the "items" or issues are raised before the special master, ruled on, and preserved by a record which the trial court can examine. The exceptions opportunity is "the means by which judicial review of those issues may be had." *Styers*, supra at 860 (2).

The special master is not required to make written findings of fact or conclusions of law, such as an auditor must (see OCGA § 9-7-8), other than as provided in OCGA § 22-2-110 (c). *Sweat v. Ga. Power Co.*, 235 Ga. 281, 284 (2) (219 SE2d 384) (1975).[2] In *Sweat*, the court had a report of the special master in addition to the award, plus a transcript of the special master's hearing. Id. at 285.

"[T]he only method of correcting any errors . . . a special master may have made in the original hearing and award is . . . by an appeal in the superior court, which begins again the process of adjudication." *City of Savannah Beach v. Thompson*, 135 Ga. App. 63, 65-66 (2) (217 SE2d 304) (1975). Value is to be decided by a jury in a de novo investigation, OCGA § 22-2-110 (d), and "issues of law erroneously decided by the special master . . . [are to be] readjudicated by the superior court judge." Id.[3]

---

[2] But see the dissent in *Sweat* and OCGA § 9-11-52 (a).

[3] Because of the procedural infirmity, i.e., lack of a special master record, we do not reach the issue of whether the superior court's consideration of exceptions to the special

Simmons not only filed exceptions and appeal to a jury, he also filed an answer to the petition, setting out the defenses put forth at the pre-trial hearing, among others. But this was too late. *Nodvin v. Ga. Power Co.*, 125 Ga. App. 821, 822-823 (2) (189 SE2d 118) (1972).

Thus, Simmons was obligated to raise the issues again in the context of the appeal to the jury on the issue of value, but could do so only insofar as they affected the value of what was taken. It is "a de novo proceeding, and it is the duty of the trial judge, by pre-trial order or during the course of the trial, to rule on all legal issues." *Zuber Lumber Co.*, supra at 364. See also *Banks v. Ga. Power Co.*, 220 Ga. App. 84, 87 (7) (469 SE2d 218) (1996). "What [OCGA §§ 22-2-112 and 22-2-114] make very clear is that the court, and not the jury on appeal, will decide the *quantity* of interest of each condemnee, and . . . will also decide the *quality* of such interest, for the reason that the appeal to the jury goes to the issue of value only and it is not intended by this act . . . to leave any other subject matter for jury determination." (Emphasis in original.) *Johnson v. Fulton County*, 103 Ga. App. 873, 884 (121 SE2d 54) (1961) (on motion for rehearing). "The question of *what* is to be taken, when in doubt, is a mixed question of law and fact, and . . . the trial court has the power and duty to make the findings of fact necessary to determine the question of law in order 'to speed the cause,' i.e., to get the issue of value before the jury as soon as possible." (Emphasis in original.) *DeKalb County v. Jackson-Atlantic Co.*, 123 Ga. App. 695, 698 (182 SE2d 160) (1971); *Walker v. Ga. Power Co.*, supra at 497 (1).

2. Simmons enumerates in two errors the court's refusal to allow him to introduce evidence, during the course of the jury trial on value, as to the value of his property adjacent to the 140-foot easement and as to consequential damages to this property.

"Taking private property for the benefit of the public is an exercise of high power, and all the conditions and limitations provided by law must be closely followed. Too much caution cannot be observed to prevent oppression and abuse. . . . [It is] necessary to have 'judicial ascertainment and supervision of *all questions and proceedings* connected with the matter.' Ga. L. 1957, p. 389, § 3. (Emphasis supplied.) 'Constitutional due process of law includes notice and hearing as a

---

master's decision is de novo with respect to fact issues or de novo only as to legal issues. "Non-value" issues would encompass both, but the case law sometimes references legal issues as though that were the extent of the superior court's domain in ruling on exceptions. The question surfaces in *Wrege*, supra. In both *Walker v. Ga. Power Co.*, supra at 497 (1), and *Budd Land Co., Ltd. v. City of Valdosta*, 165 Ga. App. 534 (301 SE2d 699) (1983), the superior court ruled on motions for summary judgment, which included new evidence and stipulations of fact produced in superior court. Compare the role of the appellate division of the Workers' Compensation Board, both before and after the 1994 amendment of OCGA § 34-9-103 (a). See *Bankhead Enterprises v. Beavers*, 267 Ga. 506 (480 SE2d 840) (1997).

matter of right where one's property interests are involved. [Cit.]' [Cit.]" *Sims*, supra at 369-370.

The property condemned was an easement and right-of-way over 1.8 acres of Simmons' property for use as a public road and for the right to control and back water so as to create a lake as had existed in July 1994 before the flood which destroyed the road and dam. Simmons contended at the hearing on his exceptions and throughout the trial that this taking constituted much more than an easement for a road and sloped dam to hold up the road. As shown by the county's plat, he owned the land on both sides of the road. He testified that he owned 65 acres, including 37 acres on the one side where a lake had been and the county intended to re-create it.

The lake had originally been created by Simmons' predecessor in title, Kennedy, who put in boards to retain the water when the county acquired a perpetual easement in July 1957 for constructing and maintaining an earthen elevation and a public road to run over it. Previously, there had been a dirt road and rickety wooden bridge. When the lake drained in 1970, because of a flood and consequent break in the elevated roadway, which served as a dam for the lake, Kennedy reestablished the lake within a few weeks. The drain mechanism is on that property. Kennedy, and Simmons after him (he bought the property in 1988), controlled the existence and level of the lake.

After the lake was destroyed in 1994, Simmons planted trees on the lake bed. He contended that the property interests condemned in effect also condemned the lake bed because the county acquired the right to control the water flow so as to create a lake. At the least, he asserted, this constituted the taking of an easement over the lake bed, for the county's purposes of creating a public lake. In the alternative, he argued, the easement and rights described in the petition for condemnation created consequential damages to that lake bed owned by Simmons because it would be covered by water and thus preclude his use of it other than as a member of the public. He sought to introduce evidence of value of that land and for what it could be used. As he points out, the county introduced evidence on the subject of the value of the lake bed, but the court refused to permit Simmons to show otherwise and limited the scope of the issue of value to the 1.8 acres in the 140-foot easement.

The only easement not in dispute was the 60-foot easement acquired in 1956 or 1957. Although there was some testimony that this was widened another 20 feet by later acquisition when the road was paved between 1987 and 1989, no documentary evidence supported this and the county did not pursue a claim of right to that additional 20 feet. Its real estate appraiser gave estimated value for the difference between 60 feet and 140 feet, the width the county

needed to meet FEMA and GEMA requirements.

The court ruled, in error, that the county had earlier acquired an easement in the lake bed and thus had "every right to cover [it] back up with water, just like it was." There was no evidence of such. The county stated that the lake bed was not county property and that it was not seeking to condemn any interest in the lake bed. The county did not even claim in its petition that it had an interest in the lake bed, as evidenced by the description of what it sought to condemn and in the drawing which it submitted. Both sides of the 140-foot easement are shown as belonging to "J. Ed Simmons." The only evidence was that the lake was created by the lake bed owner, reestablished by him when it diminished, and was permitted to remain until nature swept it away in 1994.

In making this finding in the course of the jury trial, the court at the least deprived the condemnee of any consequential damages to the lake bed occasioned by the right to flood it. Consequential damages are to be taken into consideration. OCGA § 22-2-109 (c). " 'The proper measure of consequential damages to the remainder is the diminution, if any, in the market value of the remainder in its circumstance just prior to the time of the taking compared with its market value in its new circumstance just after the time of the taking.' [Cit.]" *Dept. of Transp. v. Whitehead*, 169 Ga. App. 226, 230 (3) (312 SE2d 344) (1983), aff'd, 253 Ga. 150 (317 SE2d 542) (1984). See also *Colonial Pipeline Co. v. Williams*, 206 Ga. App. 303, 304 (425 SE2d 380) (1992). In keeping with the court's erroneous view that the county already had an easement in the lake bed, it did not charge the jury on consequential damages.

The total nature of the taking was in dispute, and the court's finding that the county already had an easement over the lake bed for the purpose of creating a lake precluded consideration of condemnee's evidence and argument that by taking control of whether a lake was created or not, and its level at any given time, condemnor was either acquiring the lake bed itself or was condemning an easement on it. This mixed issue of fact and law as to what property and interests were included for condemnation must first be determined by the trial court before a jury can be asked to value what is taken. The ownership of the lake bed was not to be determined by this jury, which according to the Code is only to find the value of condemnee's taken property.

The judgment must be reversed for a new trial of the value of all of the property interests taken, i.e., the 1.8-acre easement for the road and dam slopes, and the right to control the accumulation of water on the lake bed to the extent of the water level that existed before the flood in July 1994. Before the jury can set the value, the trial court itself must determine *what* in legal terms is being taken.

*DeKalb County v. Jackson-Atlantic Co.*, supra. Does the right of control, as expressed in the petition and to the extent shown by evidence of intended use, in effect constitute acquisition of the lake bed in fee simple, or of an easement over the lake bed, or of no interest in it at all but only a taking adjacent to the lake bed, subject to consequential damages, if any, in the lake bed? See *Harrison v. Ga. Power Co.*, 255 Ga. 74 (335 SE2d 389) (1985); *Brown v. Tomlinson*, 246 Ga. 513, 514 (272 SE2d 258) (1980); *Stephens County &c. v. Wright Bros. Constr. Co.*, 215 Ga. App. 352 (451 SE2d 802) (1994); Pindar, Ga. Real Estate Law & Procedure (3rd ed. 1986), p. 358, § 8-1.

In cases where there is condemnation of lake or pond property, the interest that is taken depends on the needs of the condemning authority. For example, in *Galloway v. Bd. of Commrs. of Banks County*, 246 Ga. 472 (271 SE2d 784) (1980), property condemned for watershed, flood control and soil conservation purposes, but ultimately used for recreational purposes, was condemned in fee simple. In *State Hwy. Dept. v. Davis*, 129 Ga. App. 142 (199 SE2d 275) (1973), the highway department condemned a certain amount of land in fee simple, which included a four-acre body of water, and a drainage easement and a detour easement "to acquire a right of way in Bulloch County for Interstate Highway 16." Id. In *Stephens County &c.*, supra, the county soil and water conservation district had an easement "to over-flow[,] flood and store water impounded by flood-retarding structures" on the fee owner's land. Id. at 353.

Insofar as the constellation of property rights in this case being a necessary taking, OCGA § 22-2-102.1 provides that "the condemning body shall be the exclusive judge" "of the necessities of the public needs." It means what it says. *Zuber Lumber Co.*, supra at 360 (4). The condemnor's discretion "will not be interfered with or controlled by the courts unless it is shown that the condemning authority acted in bad faith or beyond the powers conferred upon it by law. [Cit.]" *Sweat*, supra at 284 (3). Discretion will not be interfered with unless the record shows the condemnor "acted in bad faith or capriciously." *Leach*, supra at 23 (7). This issue was waived by Simmons' inadequate preservation of the proceeding before the special master.

3. Simmons' motion for emergency stay and direction is denied as moot.

*Judgment reversed and remanded. Birdsong, P. J., and Blackburn, J., concur.*

DECIDED MARCH 4, 1997 —
RECONSIDERATION DENIED APRIL 1, 1997 — ■

*Reagan W. Dean*, for appellant.

*Bowles & Bowles, Jesse G. Bowles, Collier & Gamble, Wilbur T. Gamble III*, for appellee.