S02A1374. RABUN COUNTY et al. v. GEORGIA TRANSMISSION CORPORATION.
(575 SE2d 474)

HINES, Justice.

The issue in this appeal is the constitutionality of the "Rabun County High Voltage Line Construction Moratorium Ordinance." For the reasons which follow, we affirm the judgment of the Superior Court of Rabun County finding the ordinance to be unconstitutional and permanently enjoining its enforcement.

Georgia Transmission Corporation ("GTC") distributes and transmits electric power and is a nonprofit electric membership corporation, organized and incorporated pursuant to OCGA § 46-3-170.

GTC is comprised of 39 affiliated electric membership corporations and is authorized to exercise the power of eminent domain pursuant to OGGA § 46-3-201 (b) (9). In 1999, GTC began planning construction of a 115-kilovolt transmission line, known as the North Burton Tap 115-KV Transmission Line Project, to service the electrical demands of the customers of Habersham Electric Membership Corporation ("Habersham EMC"), an affiliated electric membership corporation that serves Rabun County. GTC selected route "D," which crosses approximately seven miles of Rabun County, as the site for the proposed transmission line.[1] GTC anticipates that if the line is not completed by April 2003, blackouts and brownouts will occur during the summer of 2003.

In June 2000, Rabun County, through its Board of Commissioners, adopted the "Rabun County High Voltage Line Construction Moratorium Ordinance," which provides:

### Statement of policy and purpose.

This Ordinance is enacted for the following reasons:

(1) The Habersham Electric Cooperative [sic] and the Georgia Transmission Corporation have stated their intention to construct a 115 kilovolt high voltage transmission line across approximately seven miles of Rabun County to provide additional electric service to North Lake Burton/Persimmon communities.

(2) Numerous concerned citizens of Rabun County, including those whose homes and workplaces are in close proximity to the proposed high voltage transmission lines, have expressed to the Rabun County Commissioners their concern about the possible harmful effects of the electromagnetic fields that will emanate from the proposed electricity transmission lines.

(3) There have been a number of scientific studies brought to the attention of the Rabun County Commissioners by these concerned citizens that purport to suggest that the electromagnetic fields associated with electrical utility facilities, including high voltage transmission lines, may present a significant health risk.

(4) The issue of the adverse health effects of human exposure to electromagnetic radiation has been the subject of newspaper and scientific journal articles and although, to

---

[1] Route "D" will traverse lands of the United States Forest Service, and GTC is attempting to obtain the necessary permitting. GTC represents that in the event the permitting is denied, it will select an alternate route within Rabun County for construction of the power line.

date, no conclusive data exists indicating at what levels this radiation may pose certain health risks, scientific studies are beginning to indicate that electromagnetic fields may present a significant increase in incidents of various diseases, including leukemia and other cancers in children and adults.

(5) The level at which electromagnetic fields may produce adverse health effects is not known with certainty.

(6) It is technically and economically feasible to provide the electric power to meet the foreseeable needs of the North Lake Burton/Persimmon communities without constructing new high voltage transmission lines.

## Moratorium on construction of high voltage lines.

The construction or installation of new high voltage transmission lines which will transmit greater than thirty five (35) Kilovolts, in Rabun County, Georgia is hereby prohibited for a period of three (3) years commencing upon enactment of this Ordinance to allow ongoing research projects and studies, including those undertaken by the federal government, other states, academic institutions and the electric utility industry, to establish whether exposure to electromagnetic fields caused by additional electricity transmission facilities are likely to present a risk to the health, safety, and welfare of the citizens of Rabun County.

## Findings of the Rabun County Commissioners.

By the adoption of this Ordinance, the Rabun County Commissioners are not determining at this time that there are significant adverse human health effects associated with high voltage transmission, electric and magnetic fields. The Rabun County Commissioners have determined that there is significant preliminary evidence to warrant an approach of "prudent avoidance." This "strategy of caution" for high voltage transmission line construction over the next three years recognizes that while emerging evidence does not provide a basis for categorically asserting that magnetic fields pose a significant health risk, neither does it allow one to categorically assert that there are no risks. Prudence, therefore, suggests a degree of caution in dealing with electromagnetic fields until further research permits a more conclusive determination.

Prior to its passage, GTC made a written constitutional challenge to

the proposed ordinance before the Rabun County Board of Commissioners.

On August 31, 2000, GTC and Habersham EMC held a public meeting regarding the project and announced that the final selection of a "corridor" for the transmission lines would be made in October 2000 and that the project would be completed in 2003. Eight days later, GTC's counsel and the President and Chief Executive Officer of Habersham EMC received a letter from counsel for Rabun County stating that Rabun County would enforce the ordinance to prohibit construction of the proposed project.

On December 14, 2001, GTC filed a petition for declaratory judgment and injunctive relief and a motion for interlocutory and permanent injunctive relief against Rabun County and the members of its Board of Commissioners (collectively "Rabun County") seeking a declaration that the "Rabun County High Voltage Line Construction Moratorium Ordinance" is unconstitutional under the home rule and uniformity provisions of the Georgia Constitution. See Georgia Constitution of 1983, Art. IX, Sec. II, Par. I and Art. III, Sec. VI, Par. IV (a). GTC also sought a judgment enjoining enforcement of the ordinance.

GTC successfully moved to exclude any evidence or argument relating to the necessity or routing of the proposed project; the superior court ruled that the only issues for decision were whether the ordinance was unconstitutional as a special law for which provision had been made by existing general law, and whether Rabun County could diminish GTC's right to exercise the power of eminent domain. Consequently, the County was not permitted to present evidence which it contended was relevant to certain issues, including the necessity and authority for the project and bad faith. Ultimately, the superior court determined that the ordinance ran afoul of the home rule and uniformity provisions of the Georgia Constitution by affecting the exercise of GTC's power of eminent domain.

1. Rabun County contends that the superior court erred in holding that the ordinance was void as an unconstitutional interference with the power of eminent domain because the ordinance, on its face, restricts only the construction or installation of high voltage transmission lines within Rabun County for three years. But examination of the ordinance belies this contention.

Certainly, GTC is empowered to exercise eminent domain as provided in OGGA § 46-3-201 (b) (9).[2] See also OCGA § 22-3-20.[3] It is

---

[2] OCGA § 46-3-201 (b) (9) states:

(b) Subject to any limitations provided in this article or in any other law, and consistent with the purposes set forth in this article, each electric membership corporation shall have power: . . .

undisputed that GTC will have to condemn property in order to effectuate the project as currently proposed, and that the ordinance will halt the project. In fact, the ordinance, on its face, focuses on the project at issue. Although it does not recite that it places a three-year restriction on the exercise of the power of eminent domain, the stated purpose of the ordinance is to halt the intended construction of "a 115 kilovolt high voltage transmission line across approximately seven miles of Rabun County to provide additional electric service to North Lake Burton/Persimmon communities." It also specifically addresses the situation of "additional electricity transmission facilities." Most significantly, an electric membership corporation, while vested with the power of eminent domain, is authorized to acquire by condemnation interests in realty only when such interests are "necessary and appropriate to effectuate the purposes" of the electric membership corporation. OCGA § 46-3-201 (b) (9). The ordinance blocks GTC's purpose of constructing a high voltage transmission line across a seven-mile portion of Rabun County to service the county's electrical needs; therefore, the ordinance, effectively infringes on the power of GTC to acquire the property interests in question through the exercise of eminent domain.

The Georgia Constitution of 1983, Article IX, Section II, Paragraph I, provides home rule for counties, and grants the governing authority of each county the

> legislative power to adopt clearly reasonable ordinances, resolutions, or regulations relating to its property, affairs, and local government for which no provision has been made by general law and which is not inconsistent with this Constitution or any local law applicable thereto.

---

(9) To acquire, own, hold, use, exercise, and, to the extent permitted by law, sell, mortgage, pledge, hypothecate, and in any manner dispose of franchises, rights, privileges, licenses, rights of way, and easements necessary, useful, or appropriate. Any such electric membership corporation shall have the right to acquire rights of way, easements, and all interests in realty necessary and appropriate to effectuate the purposes of such electric membership corporation by condemnation under the same procedure and terms as provided by Title 22 and any other law of this state which provides a method or procedure for the condemnation of property for public purposes by all persons or corporations having the privilege of exercising the right of eminent domain.

[3] OCGA § 22-3-20 provides:

Any person operating or constructing or preparing to construct a plant for generating electricity shall have the right to purchase, lease, or condemn rights of way or other easements over the lands of others in order to run power lines, maintain dams, flow backwater, or carry on other activities necessary for constructing and operating such a plant, provided that the person first pays just compensation to the owner of the land to be affected.

However, this power of home rule does not extend to "[a]ction affecting the exercise of the power of eminent domain." Ga. Const. 1983, Art. IX, Sec. II, Par. I (c) (6).

2. In *City of Doraville v. Southern R. Co.*, 227 Ga. 504 (181 SE2d 346) (1971), this Court determined that a local governing authority could not "by ordinance impose upon a public utility essential to the welfare of the people, conditions of operation or maintenance of its property, which would confiscate or destroy its power to serve the public." Id. at 511 (1). However, Rabun County maintains that the decision in *City of Doraville v. Southern R. Co.* is inapplicable to the present situation because the utility in that case was regulated by the Georgia Public Service Commission ("PSC") and, thus, there was an adequate check on the utility's use of its power of eminent domain. But this argument too is unavailing.

It is certainly the case that the General Assembly has determined that "electric membership corporations . . . which by their corporate nature are wholly or substantially controlled by their consumers, should for regulatory purposes be classified differently in certain aspects from electric light and power companies." OCGA § 46-3-2. But "[i]t is the province of the General Assembly to determine when the right of eminent domain may be exercised." OCGA § 22-1-3. And the legislature has unquestionably delegated to and vested electric membership corporations with the power of eminent domain to effectuate the purpose of furnishing electric power and service. OCGA § 46-3-201 (b) (9). This is not to say however that the condemning authority has an absolute right of taking based upon its determination of necessity. *Central of Ga. Elec. Membership Corp. v. Mills*, 196 Ga. App. 882, 884 (397 SE2d 137) (1990). "The condemnor's discretion is not unfettered . . . it must act in good faith and within the powers conferred upon it by law." *Banks v. Ga. Power Co.*, 267 Ga. 602, 604 (481 SE2d 200) (1997). The matter is subject to proceedings before a special master and judicial review. *Central of Ga. Elec. Membership Corp. v. Mills*, supra at 884. See also *Simmons v. Webster County*, 225 Ga. App. 830 (485 SE2d 501) (1997).

3. Rabun County concedes that it does not have the power to pass an ordinance that affects the legally-exercised power of eminent domain, but urges that the ordinance at issue is constitutional as not affecting the exercise of eminent domain because GTC must first show the reasonable necessity for its proposed project before GTC can possess the power of eminent domain. But such circular argument fails.

There is simply no requirement that GTC demonstrate to Rabun County the necessity or the appropriateness of its proposed project. Quite the contrary. OCGA § 22-2-102.1 provides that the condemning body, not the governing authority, is to be the "exclusive judge" of the

"necessities of the public needs." As we have noted, there are safeguards in place for review of the decision of an electric membership corporation as a condemning body. See Division 2, supra. But even a demonstration by GTC to the superior court of the reasonable necessity of its proposed project does not save the Rabun County ordinance because the ordinance does not allow for any exception in the situation of a demonstrated necessity; rather, it is a blanket prohibition on the construction or installation of new high voltage transmission lines.

4. Rabun County urges that the ordinance does not conflict with any general laws passed by the General Assembly. But that is not so.

State preemption, which is addressed in the uniformity clause of the State Constitution, Ga. Const. 1983, Art. III, Sec. VI, Par. IV (a), is "based on the concept that statutes of the state legislature control over county ordinances." *Franklin County v. Fieldale Farms Corp.*, 270 Ga. 272, 273 (1) (507 SE2d 460) (1998). That is "the General Assembly may by general law authorize local governments by local ordinance or resolution to exercise police powers which do not conflict with general laws." Ga. Const. 1983, Art. III, Sec. VI, Par. IV (a). There is no conflict between a local law and a general law when the local law does not impair the operation of the general law, but rather augments and strengthens it. Id. at 275 (2).

In its statement of purpose and policy, the Rabun County ordinance makes the determination that "[i]t is technically and economically feasible to provide the electric power to meet the foreseeable needs of the North Lake Burton/Persimmon communities without constructing new high voltage transmission lines." This statement directly contravenes the mandate of OCGA § 22-2-102.1 that grants GTC, as the condemning body, the exclusive power to decide the "necessities of the public needs."

5. For the reasons given, Rabun County's further complaints regarding discovery and impediments to its presentation of evidence of the necessity or appropriateness of GTC's project are without merit.

*Judgment affirmed. All the Justices concur, except Thompson, J., not participating.*

DECIDED JANUARY 13, 2003.

*Powell, Goldstein, Frazer & Murphy, V. Robert Denham, Jr., Chandler P. Thompson, Stockton & Stockton, L. Allyn Stockton, Jr.,* for appellants.

*Bentley, Bentley & Bentley, Fred D. Bentley, Jr., Debra H. Bernes, Linton K. Crawford, Jr.,* for appellee.