S13A0060. SCARBOROUGH et al. v. HUNTER et al.

(746 SE2d 119)

NAHMIAS, Justice.

This case involves a decision by the Stephens County Board of Commissioners (the "Board") to abandon a 3,000-foot-long, dead-end county road, known as "Winding Bluff Road" (the "Road"), which runs along the side of a mountain and serves no existing homes or businesses. Owners of some undeveloped lots on the Road and others sued the Board, and the trial court set aside the abandonment decision. Based on that ruling, the court issued a writ of mandamus requiring the Board to repair and maintain the Road. The court also ordered the Board to pay attorney fees and later granted summary judgment against the Board on its counterclaims.

As explained below, the trial court failed to accord proper deference to the Board's decision to abandon Winding Bluff Road. Accordingly, we reverse the order setting aside the Board's abandonment decision, along with the mandamus and attorney fees award that were predicated on the court's abandonment ruling. In addition, we vacate the trial court's summary judgment order and remand the case for further proceedings on the Board's counterclaims.

1. In late 2006 and early 2007, K-M Development Corporation ("K-M") built the Road to provide access to a dozen or so undeveloped lots in a planned expansion of K-M's "The Summit" subdivision. In June 2007, the Board granted a variance from certain county requirements for subdivision roads and accepted the Road into the county road system, although county regulations required K-M to maintain the Road for the next year. After heavy rains in August 2008, the Road began to crack and fail. After 17 inches of rain in just three days during September 2009, the Road's condition became even worse. In December 2009, the county closed the Road because it was failing to the point that it was deemed unstable and unsafe. In July 2010, while the Board was in discussions with K-M about who should repair the Road, the county purchased a lot on the Road from Chris and Christy Vena, the only lot owners not associated in some way with K-M or its president and CEO John Merck.

On July 19, 2010, after the Board announced a public hearing to consider formally abandoning the Road, lot owners Jason Hunter and James Sellers, county resident Judy Medlin (who is Sellers' ex-wife), Merck, and K-M Development (collectively, "Plaintiffs") filed a complaint against Board chairman C. Dean Scarborough and the four other county commissioners, in their capacity as the Stephens County Board of Commissioners, seeking a writ of mandamus compelling the county to repair and maintain the Road, a temporary restraining

order ("TRO") preventing the public hearing, and an award of attorney fees under OCGA § 13-6-11.[1] After a hearing, the trial court entered a TRO directing the Board "not to conduct a public hearing or otherwise in any way abandon Winding Bluff Road," but the court also issued a certificate of immediate review to allow the Board to apply for an interlocutory appeal. On August 20, 2010, the Board filed an answer to the complaint and counterclaims for fraud, equitable rescission of the Road's acceptance into the county road system, punitive damages, and attorney fees under OCGA § 13-6-11.

We granted the Board's application for interlocutory appeal of the TRO and on February 28, 2011, we reversed that order. See *Scarborough v. Hunter*, 288 Ga. 687, 688 (706 SE2d 650) (2011) ("*Scarborough I*"). We held that the trial court's duty was to review the Board's decision after the Board exercised its statutorily granted discretion to determine whether to abandon the Road, not to prevent the Board from exercising its discretion at all. See id. at 689-690.

With the TRO rescinded, the Board was able to hold a public hearing, after giving proper notice, on June 28, 2011. After receiving evidence and hearing arguments from proponents and opponents of abandoning Winding Bluff Road, the Board voted unanimously to accept the county staff's recommendation to abandon the Road "on the basis that it has ceased to be used by the public to the extent that . . . no substantial public purpose is served by it and that its removal from the county road system is otherwise in the . . . best public interest," the standard for abandonment set forth in OCGA § 32-7-2 (b) (1). On July 11, 2011, Plaintiffs amended their complaint to add a count challenging the Board's abandonment decision.[2]

On September 26, 2011, the trial court held a bench trial on Plaintiffs' mandamus and attorney fees claims. On October 31, 2011, the court entered an order concluding that the Board's decision to abandon the Road was arbitrary and capricious and an abuse of discretion and was not in the best public interest; the court therefore set aside the abandonment decision. The court also ruled that the county had purchased the Venas' lot with no particular public purpose and in bad faith to influence the outcome of the mandamus

---

[1] Plaintiffs voluntarily dismissed other counts of their complaint after trial, and they are not at issue here.

[2] Plaintiffs also added a count challenging the validity of a 2010 amendment to OCGA § 32-7-2 (b) (1) on the ground that the newly added term "best public interest" was unconstitutionally vague. See Ga. L. 2010, p. 399, § 1 (adding, as an alternative ground for abandonment of a public road, "that its removal from the county road system is otherwise in the best public interest"). The trial court did not rule on Plaintiffs' constitutional claim, and in their brief to this Court, Plaintiffs "acknowledge and accept the non-constitutional basis for resolving" the appeal. Accordingly, we express no opinion on the merits of this constitutional claim.

action; on this ground, the court awarded Plaintiffs $26,323.07 in attorney fees under OCGA § 13-6-11. On the same day, the court entered an order of mandamus requiring the Board to repair and maintain the Road "in as good a condition as same was initially accepted."

On April 25, 2012, Plaintiffs filed a motion for summary judgment on the Board's counterclaims, which the Board amended on June 1, 2012, to add a count for breach of contract based on alleged violations of the variance issued in connection with the Road's acceptance by the county. After holding a hearing, on June 25, 2012, the trial court granted summary judgment to Plaintiffs on the Board's counterclaims.

On July 25, 2012, the Board filed a timely appeal to the Court of Appeals, which properly transferred the case to this Court. See Ga. Const. of 1983, Art. VI, Sec. VI, Par. III (5) (giving this Court appellate jurisdiction in "[a]ll cases involving extraordinary remedies"); *Spence v. Miller*, 176 Ga. 96, 99 (167 SE 188) (1932) (explaining that "all cases involving extraordinary remedies" includes cases involving the extraordinary legal remedy of mandamus).

2. The Board contends that the trial court erred in setting aside the Board's decision to abandon the Road and in issuing a writ of mandamus based on the court's abandonment ruling. We agree.

(a) There is "no question . . . that the county is obligated to maintain public roads" in the county road system. *Chatham County v. Allen*, 261 Ga. 177, 177 (402 SE2d 718) (1991). By statute, counties must "plan, designate, improve, manage, control, construct, and maintain an adequate county road system," and counties have "control of and responsibility for all construction, maintenance, or other work related to the county road system." OCGA § 32-4-41 (1). Counties must maintain the roads in the county system in such condition that "ordinary traffic could be taken over them." *Burke County v. Askin*, 291 Ga. 697, 701 (732 SE2d 416) (2012). See also *Commrs. of Sumter County v. McMath*, 138 Ga. 351, 352 (75 SE 317) (1912) ("Certainly a public road over which reasonable or ordinary loads can not, with reasonable or ordinary ease and facility, be hauled is not up to the standard required by law in this State."). This county duty is enforceable by mandamus under both the general mandamus statute, OCGA § 9-6-20,[3] and a special mandamus statute applicable to

---

[3] OCGA § 9-6-20 says:

All official duties should be faithfully performed, and whenever, from any cause, a defect of legal justice would ensue from a failure to perform or from improper performance, the writ of mandamus may issue to compel a due performance if there is no other specific legal remedy for the legal rights . . . .

the repair and maintenance of county roads, which may be invoked by citizens of the relevant county, see OCGA § 9-6-21 (b).[4] See *Burke County*, 291 Ga. at 698-699.

Counties also have statutory authority, however, to abandon public roads under their jurisdiction "[w]henever deemed in the public interest." OCGA § 32-7-1. The abandonment process is governed by OCGA § 32-7-2 (b) (1), which says:

> When it is determined that a section of the county road system has for any reason ceased to be used by the public to the extent that no substantial public purpose is served by it or that its removal from the county road system is otherwise in the best public interest, the county, by certification recorded in its minutes, accompanied by a plat or sketch, and, after notice to property owners located thereon, after notice of such determination is published in the newspaper in which the sheriff's advertisements for the county are published once a week for a period of two weeks, and after a public hearing on such issue, may declare that section of the county road system abandoned. Thereafter, that section of road shall no longer be part of the county road system and the rights of the public in and to the section of road as a public road shall cease.

(b) A complaint for mandamus is generally the proper way to obtain judicial review of a county's exercise of discretion to abandon a county road under OCGA § 32-7-2 (b) (1). See OCGA §§ 9-6-20, 9-6-21 (b); *Burke County*, 291 Ga. at 698-699.[5] Historically, mandamus was a remedy for government inaction — the failure of a public

---

[4] OCGA § 9-6-21 (b) says:

On the application of one or more citizens of any county against the county board of commissioners . . . , which application or action for mandamus shall show that one or more of the public roads of the county of the plaintiff's residence are out of repair; do not measure up to the standards and do not conform to the legal requirements as prescribed by law; and are in such condition that ordinary loads, with ordinary ease, cannot be hauled over such public roads, the judges of the superior courts are authorized and given jurisdiction and it is made their duty, upon such showing being made, to issue the writ of mandamus against the parties having charge of and supervision over the public roads of the county; and to compel by such proceedings the building, repairing, and working of the public roads as are complained of, up to the standard required by law, so that ordinary loads, with ordinary ease and facility, can be continuously hauled over such public roads. The judges of the superior courts shall, by proper order, in the same proceedings compel the work done necessary to build, repair, and maintain such public roads up to the standard so prescribed.

[5] The trial court held that "OCGA § 50-13-19 provides for judicial review of administrative hearings such as was conducted by [the Board] on June 28, 2011." That is incorrect. By its terms,

official to perform a clear legal duty. See *Richmond County v. Steed*, 150 Ga. 229, 231-232 (103 SE 253) (1920). However, in Georgia, mandamus will also lie " 'to control the conduct of an officer vested with a discretion ... where the exercise of that discretion has been so capricious or arbitrary as to amount to a gross abuse.' " *Bd. of Commrs. of Roads & Revenues of Walton County v. Robinson*, 160 Ga. 816, 818 (129 SE 73) (1925) (citation omitted). See also OCGA § 9-6-21 (a) ("Mandamus shall not lie ... to a public officer who has an absolute discretion to act or not to act unless there is a gross abuse of such discretion.").

In the prior appeal in this case, we delineated the respective authority of the Board and the trial court with regards to the abandonment issue:

> The function of the Board was to determine whether the road served a substantial public purpose. If the Board determines that a road has ceased to be used by the public to the extent that no substantial public purpose is served by it, then the Board may exercise its discretion to close the road. The function of the trial court in a mandamus action is to decide if the Board's action was a gross abuse of discretion.

*Scarborough I*, 288 Ga. at 689-690 (quoting *Carnes*, 258 Ga. at 773). The trial court's review is limited to the record before the Board when it made the abandonment decision, and "[t]he court shall not substitute its judgment for that of the [Board] as to the weight of the evidence on questions of fact." Id. at 689. See also *Gwinnett County v. Ehler Enterprises, Inc.*, 270 Ga. 570, 570 (512 SE2d 239) (1999) (holding that in mandamus cases alleging a gross abuse of discretion by a county board of commissioners, "the trial court's obligation is to

---

the Georgia Administrative Procedure Act ("APA"), OCGA §§ 50-13-1 to 50-13-44, applies only to certain *state* agencies that are expressly authorized by law to make rules and regulations or to determine contested cases; the APA does not apply to local governments or local administrative bodies. See OCGA § 50-13-2 (1); *Lansford v. Cook*, 252 Ga. 414, 416 (314 SE2d 103) (1984) ("[I]t is well settled that a local board of education is not included within any of the definitions of 'agency' contained in the [APA] and is thus outside its scope."); *Aldridge v. Georgia Hospitality & Travel Assn.*, 251 Ga. 234, 237 (304 SE2d 708) (1983) ("[T]he trial judge found that the Administrative Procedure Act does not apply to county boards of health, and we agree. . . . Since the [DeKalb County Board of Health] is not a state agency, APA appeal procedures simply do not apply to policies implemented by it." (citation omitted)). However, while the APA does not apply to local governments, we have long recognized the similarity between the "gross abuse of discretion standard" that courts must apply in evaluating a complaint for mandamus challenging a county's decision under OCGA § 32-7-2 (b) (1) to abandon a road and the standard that courts must apply on judicial review of decisions by state administrative bodies in contested cases under OCGA § 50-13-19 (h) (6) of the APA. See, e.g., *Carnes v. Charlock Investments (USA), Inc.*, 258 Ga. 771, 772, n.1 (373 SE2d 742) (1988).

review the sufficiency of the evidence before the board, but not to reweigh that evidence").

Furthermore, as this Court recognized long ago, "[a]ll questions necessary to be determined in order to decide whether a street shall be vacated or abandoned and the interest of the public therein released are referred to the wisdom and discretion of the lawmaking power." *Marietta Chair Co. v. Henderson*, 121 Ga. 399, 403 (49 SE 312) (1904). Economic factors, including the cost to repair a severely damaged road, are proper considerations. See *Torbett v. Butts County*, 271 Ga. 521, 522 (520 SE2d 684) (1999). Thus, while the decision to abandon a road must be for the benefit of the public, "[t]he benefit may be . . . in relieving the public from the charge of maintaining a street or highway that is no longer useful or convenient to the public." *McIntosh County v. Fisher*, 242 Ga. 66, 67-68 (247 SE2d 863) (1978).

In sum, the question before the trial court in this case was not whether, in *the court's* judgment, the Road had "ceased to be used by the public to the extent that no substantial public purpose is served by it or that its removal from the county road system is otherwise in the best public interest," OCGA § 32-7-2 (b) (1), but only whether *the Board's* judgment on these matters was so arbitrary and capricious that it amounted to a "gross abuse of . . . discretion," OCGA § 9-6-21 (a). And in the appeal of the trial court's mandamus order to this Court, our standard of review for factual determinations is also "whether there is any evidence supporting the decision of the local governing body, not whether there is any evidence supporting the decision of the superior court." *Fulton County v. Congregation of Anshei Chesed*, 275 Ga. 856, 859-860 (572 SE2d 530) (2002). Similarly, whether the Board's abandonment decision was a gross abuse of discretion, when the evidence is viewed in that light, is a question of law that this Court reviews de novo, owing no deference to the trial court. See *Carnes*, 258 Ga. at 772, n.1. It is to this question that we now turn.

(c) OCGA § 32-7-2 (b) (1) authorizes a county to abandon a county road when the road "has for any reason ceased to be used by the public to the extent that no substantial purpose is served by it or that its removal from the county road system is otherwise in the best public interest." At the June 28, 2011 public hearing before the Board, county administrator and engineer John Rutan recommended abandonment of Winding Bluff Road because it was not safe for public use in its present condition, the expected cost to make it safe was between $600,000 and $800,000, there were no houses or businesses on the Road, and the public was not using the Road. Rutan added that the Road's failure was primarily attributable to improper construction by K-M Development, including the use of decomposable fill material

such as logs and vegetation in the road base and construction of the Road over two active springs — defects that the construction of the roadway concealed. Photographs of the Road and independent engineering reports supporting Rutan's conclusions were presented to the Board. So were affidavits from two residents of The Summit whose lots overlook the Road, stating that the Road's primary users before its closing in December 2009 were K-M and its CEO Merck and teenagers who would occasionally hang out in the cul-de-sac and use drugs. Rutan noted that when seeking the county's acceptance of the Road in 2007, K-M did not disclose the Road's design and construction flaws, and he asserted that K-M had not complied with a variance condition requiring it to maintain a ditch along the first 555 feet of the Road, which he said contributed to the Road's failure.

Plaintiffs Hunter, Sellers, Medlin, and Merck, along with a few other individuals, spoke against abandonment, emphasizing the county's acceptance of the Road in 2007, its failure to maintain the Road thereafter, and its closure of the Road in December 2009, as well as the alleged use of the Road by "many members of the public . . . to some extent," its importance to development of the dozen or so adjoining lots, and the potential loss of tax revenue from development of those lots. Plaintiffs also pointed to the county's ownership of one lot on the Road (the lot the county had purchased from the Venas) as proof that abandonment was not in the best public interest. After hearing all the speakers and considering the other evidence presented, the Board voted unanimously to accept the county staff's recommendation and to abandon the Road.

Although there was conflicting evidence on some points, the Board was entitled to credit the evidence presented to it at the public hearing that K-M's defective construction of the Road was the primary cause of the Road's failure; that to make the Road safe, it would need to be rebuilt almost entirely at a cost of $600,000 to $800,000; that Plaintiffs' proposal to merely repave the Road for $76,000 would not make it stable; and that there was very little legal public use of the Road by anyone other than the developer prior to the Board's barricading of the Road after it was deemed unsafe in December 2009. This evidence amply supported the Board's conclusion, in accord with the statutory standard, that the Road had "ceased to be used by the public to the extent that . . . no substantial public purpose is served by it and that its removal from the county road system is otherwise in the . . . best public interest." See OCGA § 32-7-2 (b) (1); *Carnes*, 258 Ga. at 773; *Torbett*, 271 Ga. at 522.

Thus, there was no basis for the trial court to find, "[a]fter reviewing [the hearing] record, . . . that the decision to abandon Winding Bluff Road [wa]s arbitrary or capricious and the decision to

abandon was an abuse of discretion." Moreover, the trial court's conclusion that "abandonment is not in the best public interest" inappropriately substituted the court's view of the evidence and the public interest for that of the Board. Compare *Clear Vision CATV Svcs., Inc. v. Mayor of Jesup*, 225 Ga. 757, 759 (171 SE2d 505) (1969) ("What the plaintiff seeks here is to substitute the judgment of the court for the judgment of the city commission. This the court will not undertake.").

Plaintiffs contend that this is a pure failure-to-maintain case like *Cherokee County v. McBride*, 262 Ga. 460 (421 SE2d 530) (1992), where we held that a county may not shirk its statutory duty to repair and maintain a public road to the point that the road becomes impassable and then abandon the road under OCGA § 32-7-2 (b) (1) based solely on the resulting nonuse. See *McBride*, 262 Ga. at 461.[6] But that is not what happened in this case. The county staff strongly disputed Plaintiffs' allegations that the Road had become unsafe and impassable in the short time since K-M built it solely because the county did not maintain the Road for part of that period. There was certainly *some* evidence presented at the public hearing to allow the Board to attribute the Road's failure, and the resulting lack of a substantial public purpose, to defects in the Road's initial design and construction as well as K-M's failed obligation to maintain the ditch alongside the Road, instead of exclusively to the county's failure to maintain the Road. Moreover, a decision to repair the Road would have imposed significant costs on the public while primarily benefitting the very entity responsible for the problem, K-M Development. There is no indication in our opinion in *McBride* that these or similar circumstances were present in that case.

In addition, *McBride* was decided long before the 2010 amendment to OCGA § 32-7-2 (b) (1), which authorizes counties to abandon public roads on a new ground that is not textually tied to the extent of the public's use of the road. See Ga. L. 2010, p. 399, § 1 (authorizing abandonment "[w]hen it is determined that a section of the county road system has for any reason ceased to be used by the public to the extent that no substantial public purpose is served by it *or that its removal from the county road system is otherwise in the best public interest*" (text added by the 2010 amendment in italics)). Thus, the 2010 amendment appears to have undermined the key rationale for *McBride*'s holding that Cherokee County could not abandon the badly

---

[6] In the prior appeal in this case, we overruled *McBride* but only "[t]o the extent that [it] could be read" to authorize a prospective injunction against the Board's exercise of discretion. *Scarborough I*, 288 Ga. at 689, n.5.

deteriorated unpaved road at issue in that case because "[t]he fact that no substantial public purpose is now served by the road is due to the county's failure to comply with its duty to repair and maintain it." 262 Ga. at 461. We need not decide in this case whether *McBride* remains good law, however, because there is no indication that *McBride* involved the circumstances that are present here. See *Smith v. Bd. of Commrs. of Athens-Clarke County*, 264 Ga. 316, 317 (444 SE2d 775) (1994) (holding that *McBride* is inapplicable where there is evidence that, "for reasons other than [the county's] failure to repair and maintain the unpaved road, it has nevertheless 'ceased to be used by the public to the extent that no substantial public purpose is served by it' " (quoting OCGA § 32-7-2 (b) (1)).

(d) Accordingly, we hold that the trial court erred in concluding that the Board's decision to abandon Winding Bluff Road was arbitrary and capricious and thus a gross abuse of discretion. We therefore reverse the trial court's order setting aside the Board's abandonment decision. Reversal of the abandonment order requires that we also reverse the mandamus order, which was explicitly predicated on the setting aside of the Board's abandonment decision.

3. The Board also challenges the trial court's award of $26,323.07 in attorney fees to Plaintiffs under OCGA § 13-6-11, which says:

> The expenses of litigation generally shall not be allowed as a part of the damages; but where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them.

We have held that this statute authorizes a fee award only to a "prevailing party," which means a party that has obtained an award of damages or other affirmative relief on its underlying claims. See *Benchmark Builders, Inc. v. Schultz*, 289 Ga. 329, 330 (711 SE2d 639) (2011). The trial court here awarded the attorney fees in relation to its ruling granting Plaintiffs affirmative relief by setting aside the Board's abandonment order and issuing a writ of mandamus requiring the Board to repair and maintain the Road. We have reversed those rulings, however, and Plaintiffs therefore are no longer prevailing parties. Accordingly, we vacate the attorney fees award under OCGA § 13-6-11.

4. Finally, we consider the trial court's order granting summary judgment to Plaintiffs on the Board's counterclaims. In that order, a new judge assigned to the case after the road abandonment and mandamus issues had been ruled upon wrote that the previous judge

had already "considered allegations that John Merck buried debris in the slopes; failed to maintain 550 feet of ditches and culverts; and that the road was built over two springs," and observed that "[t]he only new allegation before the Court, and thus not considered by [the prior judge], is the allegation of the 'sham' real estate sales" to Hunter and Sellers. The court concluded, in light of the undisputed fact that the Board did not know the details of those two sales when it voted to abandon the Road, that the Board could not prove an essential element of their fraud claim, justifiable reliance, because the Board's knowledge that the two sales were sham transactions only would have increased the Board's incentive to abandon the Road — a point confirmed by the Board in two affidavits submitted in opposition to Plaintiffs' summary judgment motion.[7] The court dismissed as speculation the argument that the previous judge would have been more likely to affirm the Board's abandonment decision had the judge known that the sales to Hunter and Sellers were illegitimate. With that, the court entered summary judgment for Plaintiffs on the Board's counterclaims. Because it is apparent that the grant of summary judgment was based largely on the previous rulings regarding abandonment and mandamus, which we are reversing, we vacate the summary judgment order and remand the case to the trial court for further proceedings on the Board's counterclaims.

*Judgment reversed in part and vacated in part, and case remanded. All the Justices concur.*

DECIDED JULY 11, 2013.

*Sanders & Ranch, Brian C. Ranch*, for appellant.
*James E. Cornwell, Jr.*, for appellee.

---

[7] These affidavits, from two of the three county commissioners at the time the Board accepted the Road into the county road system, also said clearly that Merck affirmatively represented to the Board in 2007 that the Road "was in fact stable and had been properly constructed" and that they would not have voted to accept the Road had they known that "vegetative materials such as stumps, logs, trash, and other debris capable of decomposing or breaking down were in fact buried in the slopes."