**THIRD DIVISION
DOYLE, P. J.,
REESE, J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**August 31, 2022**

# In the Court of Appeals of Georgia

A22A0826. MORRIS et al. v. SUMTER COUNTY et al.

REESE, Judge.

Beginning in 2010, Appellee Sumter County ("the County") maintained and repaired several roads along Lake Blackshear. However, in 2019, the County ceased its maintenance of the roads. Thereafter, numerous residents who lived on or owned property on these roads ("the residents") filed a petition for writ of mandamus and declaratory judgment against the County, its Board of Commissioners, and the Board members to have the roads declared "public" and compel the County to continue its maintenance and repair. The trial court denied the residents' petition. For the reasons set forth infra, we vacate the judgment of the trial court and remand the case with direction.

"A trial court's findings of fact after a declaratory judgment hearing are analogous to a jury verdict and will not be interfered with if there is any evidence to

support them."[1] So viewed, the record shows that the roads at issue, Statham Lakefront Road, East Entrekin Road, West Entrekin Road, and Selma Lane, are all located in the Statham Lakefront Properties subdivision, although a portion of Statham Lakefront Road extends beyond the entrance of the subdivision to Lamar Road. Statham Lakefront Road is the only road into and out of the subdivision, and the roads are used to access other roads in the subdivision. Statham Lakefront Road, East Entrekin Road, West Entrekin Road, and Selma Lane have been open to the public since at least 2003, and access to the roads has never been restricted.

In 1981, plats were recorded showing the subdivision and all of the roads from Lamar Road to Lake Blackshear.[2] Until recently, the roads were listed as county roads by the regional Geographic Information System, which maintains maps based on input from government agencies.[3]

---

[1] *Strange v. Towns*, 330 Ga. App. 876 (769 SE2d 604) (2015) (punctuation omitted).

[2] The 1981 plats show a single road — Statham Lakefront Road — extending from Lamar Road to the lake. At some point, however, it appears that portions of Statham Lakefront Road may have been renamed East Entrekin Road, West Entrekin Road, and Selma Lane.

[3] On June 10, 2021, a few days before the hearing in this case, the Sumter County Board of Commissioners passed a resolution instructing the director of the regional Geographic Information System to remove the roads from the list of roads owned or maintained by the County.

In 1983, the Sumter County Board of Commissioners adopted standard specifications for County roads.[4] According to the minutes from a 1996 Board of Commissioners meeting, the county attorney reported that the developer had approached him concerning the roads in the subdivision. The roads did not meet the County's specifications, and the Board discussed the possibility of requesting a bond for road maintenance but ultimately took no action.

In 2007, a resident addressed the Board of Commissioners on behalf of the Statham Lakefront Properties Homeowners Association and asked the County to assist with maintenance of the roads in the subdivision, which the residents were willing to deed to the County. Once again, the Board took no action.

According to a former County Commissioner, until 2008, all of the roads in the subdivision were considered private, but that year the Board of Commissioners accepted Statham Lakefront Road as a "trial road" in order to begin improvement projects on it. On April 19, 2010, Lake Blackshear Holdings, LLC, deeded Statham Lakefront Road to the Statham Lakefront Properties Homeowners Association. The same day, the homeowners association entered into a road maintenance easement with

---

[4] Apparently, the County first adopted minimum road standards in 1980, but the 1980 standards are not a part of the record on appeal.

the County regarding Statham Lakefront Road, which was recorded in superior court.[5]

The easement provides in part:

> The purpose of this easement is [to] allow Sumter County, by and through its Board of Commissioners and its designees, to access the roadway contained in said easement for the sole purpose of road, shoulder and ditch maintenance for public safety purposes, including, but not limited to school bus ingress and egress and emergency vehicles. This easement in no way requires or mandates that Sumter County conduct any maintenance on said roadway, its shoulders and ditches whatsoever, and any such repairs and maintenance shall be done at the sole discretion of Sumter County, and only when such is deemed to be in the best interest of the citizens of Sumter County. Further, Sumter County may cancel and surrender this easement to the lawful owners at any time without notice, if in the discretion of Sumter County, this easement for road maintenance is deemed to not be in the best interest of the citizens of Sumter County, Georgia.

Around this time, the County put up green road signs, which identified the roads as county roads, as well as traffic control signs, and began cutting the grass

---

[5] The Board of Commissioners approved the 2010 easement. A largely identical easement was executed and recorded in 2015. Although the Chair of the Board and the County Clerk signed the 2015 easement, there is no record of the 2015 easement ever being approved by the Board of Commissioners.

along the roads. Local residents also put up traffic signs and patched potholes, although it is not clear from the record when this work occurred.

It is undisputed that between 2010 and 2019, the County maintained not just Statham Lakefront Road, but all of the roads at issue. Specifically, as part of the County's 2015 paving project, the County resurfaced the portion of Statham Lakefront Road from Lamar Road to the beginning of the subdivision. A Transportation Special Purpose Local Option Sales Tax (TSPLOST) and a Local Maintenance Improvement Grant (LMIG) funded the 2015 paving project.

As part of the County's 2017 paving project, the County resurfaced the portion of Statham Lakefront Road within the subdivision, as well as East Entrekin Road and Selma Lane, and performed additional maintenance on Statham Lakefront Road. A TSPLOST, Special Purpose Local Option Sales Tax (SPLOST), and LMIG funded the 2017 paving project, but only TSPLOST/SPLOST funds were used to maintain the roads in question.

In 2019, the County stopped maintaining the roads within the subdivision. At the June 2021 hearing before the trial court, the Director of Public Works for the County testified that the roads required repair, and, without repair and maintenance, the roads were unable to carry ordinary loads. He estimated that it would cost

5

between $1.2 million and $1.6 million to bring the roads into compliance with the County's specifications.[6]

In November 2020, approximately 30 residents and property owners filed a petition for writ of mandamus and declaratory judgment against the County, its Board of Commissioners, and the Board members, seeking to have Statham Lakefront Road, East Entrekin Road, West Entrekin Road, and Selma Lane declared "public roads" and to compel the County to make repairs and maintain the roads. Following briefing and an evidentiary hearing, the trial court ruled that the Board did not expressly accept any offer to dedicate the roads and that the County's maintenance of the roads and use of tax funds to maintain the roads did not constitute an implied acceptance of any offer to dedicate the roads. This appeal followed.[7]

The grant or denial of mandamus relief to maintain public roads "lies largely in the discretion" of the trial court.[8] This Court will not interfere with a trial court's

---

[6] As of the hearing, the County still maintained and intended to continue maintaining the portion of Statham Lakefront Road that extends from the entrance of the subdivision to Lamar Road.

[7] See generally OCGA § 5-6-34 (a) (7) (permitting appeals from all judgments or orders granting or refusing to grant mandamus). The residents initially appealed to the Supreme Court of Georgia, which found no basis for its jurisdiction and transferred the case to this Court. See Case No. S22A0352 (Dec. 14, 2021).

[8] *Burke County v. Askin*, 294 Ga. 634, 636-637 (2) (755 SE2d 747) (2014).

6

decision on mandamus "absent a showing that the court manifestly abused its discretion."[9] However, we review the trial court's conclusions of law de novo.[10] With these guiding principles in mind, we now turn to the residents' claims of error.

1. The residents claim that the trial court erred in disregarding common-law provisions allowing a court to find the implied acceptance of the dedication of roads based on public use and County maintenance, and, in doing so, erred in finding that the roads were not public roads. We agree that the trial court disregarded certain common-law provisions.

"Dedication is the setting aside of land by the owner for a public use."[11] To establish a dedication of land to public use, "there must be an offer, either express or implied, by the owner of the land, and an acceptance, either express or implied, by the appropriate public authorities or by the general public."[12] Land is dedicated for public

_____

[9] Id. at 637 (2).

[10] See *Strange*, 330 Ga. App. at 876.

[11] *Rouse v. City of Atlanta*, 353 Ga. App. 542, 544 (1) (839 SE2d 8) (2020) (citation and punctuation omitted).

[12] *Kaplan v. City of Sandy Springs*, 286 Ga. 559, 560 (2) (690 SE2d 395) (2010) (citation and punctuation omitted).

7

use when it is donated by the owner and accepted by the public "for public road purposes, in accordance with statutory or common-law provisions."[13]

The burden is on the party who relies on a dedication of land to public use to prove it.[14] Thus, the burden was on the residents to prove the dedication of the roads to public use.

"Georgia cases have not required that the public use the land for any specific period of time in order to impliedly accept the offer of dedication; rather the cases have indicated that the use must simply be over a period of time long enough to indicate an intent or purpose to accept the offer."[15]

---

[13] OCGA § 32-1-3 (8); see OCGA § 44-5-230 ("After an owner dedicates land to public use either expressly or by his actions and the land is used by the public for such a length of time that accommodation of the public or private rights may be materially affected by interruption of the right to use such land, the owner may not afterwards appropriate the land to private purposes."). The Georgia Code of Public Transportation distinguishes between "public roads" which are "open to the public or [have] been acquired as right of way, and [are] intended to be used for enjoyment by the public and for the passage of vehicles in any county or municipality of Georgia . . ." and "private roads," which are "privately owned" and "only open for the benefit of one or more individuals and not for the general public." OCGA § 32-1-3 (24), (21).

[14] See *Lines v. State*, 245 Ga. 390, 392 (1) (264 SE2d 891) (1980).

[15] *Smith v. State*, 248 Ga. 154, 160 (2) (282 SE2d 76) (1981); see OCGA § 32-3-3 (c) ("[A]ny state agency, county, or municipality is authorized to acquire by prescription and to incorporate into its system of public roads any road on private land which has come to be a public road by the exercise of unlimited public use for the preceding seven years or more.").

"It is presumed that an owner has expressly dedicated streets to the public when she subdivides a tract of land and records a plat showing lots with designated streets."[16] The County contends that there was no offer to dedicate Statham Lakefront Road because the homeowners association made no express offer after the 2010 deed, which transferred ownership of the road to the association. Because the developer subdivided the land and recorded plats in 1981 showing the subdivision and the streets at issue, we must presume that the developer intended to dedicate the roads within the subdivision and Statham Lakefront Road to Lamar Road to the public, as shown on the plats.[17] Moreover, acceptance by the public need not be immediate, "but may be made when public necessity or convenience arises."[18]

Of course, even when there has been an offer to dedicate roads, "[t]he duty of the county to repair the roads . . . does not arise unless the roads are accepted."[19] In this case, it is undisputed that the County did not expressly accept any offer to

---

[16] *Cobb County v. Crew*, 267 Ga. 525, 527 (1) (481 SE2d 806) (1997).

[17] See *Ross v. Hall County Bd. of Commrs.*, 235 Ga. 309, 311 (219 SE2d 380) (1975) (concluding as a matter of law that roads were expressly dedicated to the public when evidence showed that plats were recorded for the subdivision).

[18] *Smith*, 248 Ga. at 160 (2).

[19] *Ross*, 235 Ga. at 311.

9

dedicate the roads. In its order denying mandamus, the trial court noted that the Board of Commissioners never expressly accepted dedication, and, instead, consistently rejected offers of dedication when they arose at Board meetings. We agree that the Board never expressly accepted any offer to dedicate the roads and took no action when the matter was raised at Board meetings in 1996 and 2007.[20] However,

_____

[20] We note that when the Board adopted its 1983 road specifications, the specifications provided: "Future developers and citizens who may purchase lots in subdivisions should take special note that until a road is accepted by the Board of Commissioners, the road remains the property of the developer and the responsibility for the paving and upkeep of said street or road remains the responsibility of the developer. The mere recording of a deed in the Clerk's Office of the Sumter [County] Superior Court does not bind the Board of Commissioners to accept any road or street and that recordation alone is not tantamount to acceptance. The acceptance of a road or street by the Board of Commissioners is affirmed only by such specific acceptance appearing on the minutes of a regular or called [meeting] of the Board of Commissioners of Sumter County." Later, in 1996, the Board of Commissioners adopted an ordinance regarding the acceptance of deeds and plats: "Since the board of commissioners does not have to accept title to property conveyed to such board and since it can be confusing to the public to have a deed recorded, or a plat recorded, that the board of commissioners has not accepted, and may not accept, any person desiring to convey title in property to the board of commissioners of the county is required to submit the written conveyance and/or plat to the board of commissioners for the commissioners' acceptance, approval or rejections. Deeds that are accepted shall have stamped on their face, 'Accepted by the Board of Commissioners of Sumter County, this __ day of __, 19__.' and signed by the county administrator of the county or by the chairman of the board of commissioners. No deed or plat will be recorded in the office of the clerk of superior court without such a stamp appearing on the face of the deed." As set forth above, the evidence is undisputed that the County did not expressly accept any offer to dedicate the roads in conformity with either of the Board's pronouncements. Because the 1983 road specifications and the

10

acceptance of a dedication may be implied.[21] Accordingly, the Board's lack of express

acceptance is not controlling.

Furthermore, an offer to dedicate may be accepted "by the appropriate public

authorities *or by the general public*."[22] Stated another way, an offer of dedication and

use by the public would not "make a street a public street" so as to task a county with

the burden of repairs and maintenance "unless the dedication is accepted by the

proper municipal authorities *or there is evidence of recognition of the street as a

public street*."[23] Where "the owner of lands expressly dedicates the same to public use

as a public road, acceptance by the public by public use is sufficient to complete the

dedication without acceptance by the public authorities of the county" and "[i]t is not

---

1996 ordinance govern express acceptances by the Board, they do not control whether the County or public impliedly accepted dedication of the roads. See OCGA § 32-1-3 (8); *Kaplan*, 286 Ga. at 560 (2). Accordingly, we need not consider whether these local ordinances are pre-empted by state law. See generally *Gebrekidan v. City of Clarkston*, 298 Ga. 651, 653 (2) (784 SE2d 373) (2016) ("State statutes generally control over local ordinances on the same subject.").

[21] See *Kaplan*, 286 Ga. at 560 (2); OCGA § 32-1-3 (8).

[22] *Kaplan*, 286 Ga. at 560 (2) (citation and punctuation omitted; emphasis supplied).

[23] *Chatham Motorcycle Club v. Blount*, 214 Ga. 770, 773 (1) (107 SE2d 806) (1959) (citation and punctuation omitted; emphasis supplied).

11

essential to constitute a valid dedication to the public that the right of use should be vested in a corporate body."[24]

In its order, the trial court acknowledged the Supreme Court's decisions in *Kaplan v. City of Sandy Springs*[25] and *Chatham Motorcycle Club v. Blount*,[26] but nevertheless stated that the residents were obligated to demonstrate that *the Board* had accepted dedication. Finding that the Board had consistently rejected dedication, the trial court did not address whether dedication had been accepted by the general public or whether there was evidence of recognition of the streets as public. Thus, the trial court misconstrued the case law and disregarded the common-law provision that dedication could be accepted not only by the Board but also by recognition of the road as a public road by the public.[27]

---

[24] Id. at 774-775 (1) (citation and punctuation omitted); accord *Smith*, 248 Ga. at 159 (2).

[25] 286 Ga. 559.

[26] 214 Ga. 770.

[27] See *Kaplan*, 286 Ga. at 560 (2); accord *Smith*, 248 Ga. at 159 (2); see *Chatham Motorcycle Club*, 214 Ga. at 773-775 (1); see also OCGA § 32-1-3 (8) (providing for "acceptance by the public of property for public road purposes, in accordance with statutory or common-law provisions").

12

In its order, the trial court found that the public's *use* of the roads was insufficient to establish dedication. Of course, "[t]he mere fact that the public uses the property of a private individual is not necessarily inconsistent with the retention of dominion by the owner."[28] But in this case, there was also evidence that the County maintained the roads, using public funds, between 2010 and 2019. Yet the trial court failed to consider whether these facts established that dedication had been accepted by the general public or whether there was evidence of recognition of the streets as public, as permitted by common-law provisions.[29] Accordingly, we vacate the decision of the trial court and remand the case for the trial court to consider whether there was evidence of recognition of the streets as public streets or acceptance of the dedication by the public.[30]

2. The residents also contend that the trial court erred in denying their petition for mandamus to compel the County to repair the roads.

---

[28] *Dunaway v. Windsor*, 197 Ga. 705, 710 (30 SE2d 627) (1944) (citation and punctuation omitted).

[29] See *Chatham Motorcycle Club*, 214 Ga. at 775 (1) ("It is not essential to constitute a valid dedication to the public that the right of use should be vested in a corporate body.") (citation and punctuation omitted).

[30] See generally *Amin v. Guruom, Inc.*, 280 Ga. 873, 875 (635 SE2d 105) (2006) (vacating trial court's judgment and remanding case for further proceedings where judgment was based on an erroneous legal theory).

A county's duty to maintain public roads is enforceable by mandamus under both the general mandamus statute,[31] and a special mandamus statute.[32] As the Supreme Court of Georgia has explained, counties are obligated to maintain public roads in the county road system such that "ordinary traffic could be taken over them."[33]

---

[31] See OCGA § 9-6-20 ("All official duties should be faithfully performed, and whenever, from any cause, a defect of legal justice would ensue from a failure to perform or from improper performance, the writ of mandamus may issue to compel a due performance if there is no other specific legal remedy for the legal rights[.]").

[32] See OCGA § 9-6-21 (b) ("On the application of one or more citizens of any county against the county board of commissioners where by law supervision and jurisdiction is vested in such commissioners over the public roads of such counties and the overseers of the public roads complained of . . . , which application or action for mandamus shall show that one or more of the public roads of the county of the plaintiff's residence are out of repair; do not measure up to the standards and do not conform to the legal requirements as prescribed by law; and are in such condition that ordinary loads, with ordinary ease, cannot be hauled over such public roads, the judges of the superior courts are authorized and given jurisdiction and it is made their duty, upon such showing being made, to issue the writ of mandamus against the parties having charge of and supervision over the public roads of the county; and to compel by such proceedings the building, repairing, and working of the public roads as are complained of, up to the standard required by law, so that ordinary loads, with ordinary ease and facility, can be continuously hauled over such public roads.").

[33] *Scarborough v. Hunter*, 293 Ga. 431, 433 (2) (a) (746 SE2d 119) (2013) (citation and punctuation omitted); see OCGA § 32-4-41 (1) (providing that counties "shall plan, designate, improve, manage, control, construct, and maintain an adequate county road system and shall have control of and responsibility for all construction, maintenance, or other work related to the county road system.").

14

The County argues that even if the roads are "public," it is not required to maintain them because the roads have not been designated to be part of the county road system, as required by OCGA § 32-4-40.[34] We are not persuaded. As set forth above, dedication of public roads to the county may be by implication.[35]

> A statute must be construed in relation to other statutes of which it is a part, and all statutes relating to the same subject-matter . . . are construed together, and harmonized wherever possible, so as to ascertain the legislative intendment and give effect thereto. It is a basic rule of construction that a statute . . . should be construed to make all its parts harmonize and to give a sensible and intelligent effect to each part, as it is not presumed that the legislature intended that any part would be without meaning.[36]

Because a road may be dedicated to a county by implication, a lack of express designation cannot be determinative of whether a road is "public" for purposes of the county's maintenance responsibilities pursuant to the general and specific mandamus statutes.

---

[34] See OCGA § 32-4-40 ("Each county shall, by resolution, designate roads to be a part of its county road system; and such resolutions shall be recorded in the minutes of the county.").

[35] See OCGA §§ 32-1-3 (8); 32-3-3 (c).

[36] *Goldberg v. State*, 282 Ga. 542, 546-547 (651 SE2d 667) (2007) (citation and punctuation omitted).

15

As set forth above, the evidence at the hearing was undisputed that the roads required repair and maintenance, without which they were unable to carry ordinary loads. On remand, after applying the common-law provisions and determining whether the roads are public, the trial court should reconsider the residents' petition for mandamus relief.

*Judgment vacated and case remanded with direction. Doyle, P. J., and Senior Appellate Judge Herbert E. Phipps concur.*