**SECOND DIVISION**
**MILLER, P. J.,**
**MERCIER and COOMER, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**November 3, 2020**

# In the Court of Appeals of Georgia

A20A1550. COIN-OP SOLUTIONS, LLC v. NORCROSS CO-055
 CONVENIENCE, LLC.

COOMER, Judge.

This case concerns an underlying dispute over shared revenue from the operation of coin-operated amusement machines (COAMs), which are regulated by the Georgia Lottery Corporation (the "GLC"). See OCGA § 16-12-35 and OCGA §§ 50-27-70 – 50-27-104. Coin-Op Solutions, LLC ("Coin-Op") seeks our review of the superior court's final order and judgment which affirmed the GLC's hearing officer's decision resolving the underlying dispute in favor of Norcross Convenience, LLC ("Norcross Convenience"). For the reasons set forth below, we vacate the superior court's judgment and remand the case with direction.

The general facts are undisputed. Coin-Op leases COAMs to various convenience stores, and shares the earnings from its machines with store owners. Coin-Op entered a contract to place COAMs at a convenience store owned by Norcross Convenience. The contract required Coin-Op and Norcross Convenience to share the earnings from the COAMs equally. A dispute arose during the contract, and the parties went before the GLC for resolution.

*Proceedings before the GLC.* Coin-Op filed a dispute with the GLC alleging that Norcross Convenience had failed to pay Coin-Op its full share of the earnings for several years in breach of their contract. On January 29, 2019, the dispute was heard by a GLC-designated hearing officer. On May 20, 2019, the hearing officer issued an order finding in favor of Norcross Convenience. Weeks later, on July 17, 2019, the hearing officer issued a supplemental order awarding attorney fees to Norcross Convenience. Coin-Op filed a request for reconsideration with GLC's CEO on July 5, 2019.[1] Because the CEO did not respond to the request for reconsideration within 30 days, Coin-Op asserted the motion was denied as a matter of law as of August 5,

---

[1] We note that Coin-Op's request for reconsideration was submitted to the CEO more than ten days after the hearing officer issued its order on May 20, 2019; however, the submission preceded the hearing officer's issuance of the supplemental order on July 17, 2019.

2019 pursuant to GLC Rule 13.2.5 (1) (b) (4) ("[A] Motion for Review shall be deemed denied if the President/CEO . . . fails to provide a decision to either grant or deny the [motion] within 30 days from receipt[.]").

*Proceedings in the superior court.* On September 9, 2019, Coin-Op filed a petition to vacate in the superior court challenging the GLC hearing officer's decision. The petition only named Norcross Convenience as a respondent. In response to the petition to vacate, Norcross Convenience filed a motion for summary judgment, as well as petitioned for the confirmation of the hearing officer's rulings. On January 10, 2020, the superior court issued an order granting Norcross Convenience's motion for summary judgment, as well as its petition for confirmation. On February 7, 2020, Coin-Op timely filed a notice of appeal, and the appeal was docketed in this Court.

1. As an initial matter, we note that this Court's

interpretation and application of statutory language is guided by the following principles: A statute draws its meaning, of course, from its text. Under our well-established rules of statutory construction, we presume that the General Assembly meant what it said and said what it meant. To that end, we must afford the statutory text its "plain and ordinary meaning," we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would. Though we may review the text of the provision in question and

its context within the larger legal framework to discern the intent of the legislature in enacting it, where the statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning ends.

*Amazing Amusements Group, Inc. v. Wilson*, 353 Ga. App. 256, 257-258 (835 SE2d 781) (2019) (citation omitted).

The GLC, which was created by the General Assembly, regulates COAMs through a statutory framework set forth in OCGA §§ 16-12-35, and 50-27-70 to 50-27-104, as well as through its own set of administrative rules.[2] See *Amusement Leasing, Inc. v. Ga. Lottery Corp.*, 352 Ga. App. 243, 243-245 (1) (834 SE2d 330) (2019) ("the GLC . . . administers Georgia's statutory framework applicable to COAMs and COAM businesses. . . . There is created a body corporate and politic to be known as the [GLC] which shall be deemed to be an instrumentality of the state, and not a state agency, and a public corporation." (citations and footnote omitted)). The COAM statutes grant the GLC the authority to adopt rules governing the procedures for resolving disputes between licensees, including appeal rights for

---

[2] The rules at issue in this case concern administrative hearings before the GLC. See GLC Rules 13.2.1 to 13.2.10, https://www.gacoam.com/API/Documents/Document?documentID=253 (last visited Oct. 28, 2020).

licensees who are dissatisfied with the outcomes of the dispute resolution process. OCGA § 50-27-102 (d) (3)-(5). The GLC has exclusive jurisdiction of all disputes between and among any licensees or former licensees whose licenses were issued pursuant to the COAM statutes relating in any way to any agreement involving COAMs, distribution of funds, tortious interference with contract, other claims against a subsequent master license holder or location owner, or any other claim involving coin operated amusement. See OCGA § 50-27-102 (d) (2) ("All disputes subject to the provisions of this Code section certified by a master licensee, location owner, or location operator shall be decided by a hearing officer approved or appointed by [the GLC]."); GLC Rule 13.2.1 (2) ("Administrative hearings will be held by a Hearing Officer appointed by the President/CEO to hear such cases."). Such disputes shall be referred to a hearing officer who is charged with conducting a hearing and issuing a decision. See OCGA § 50-27-102 (d) (1)-(4). See also GLC Rule 13.2.4 (rule provides that GLC hearing officers must issue an order after the hearing).

As part of the statutory framework, the General Assembly gave the GLC authority to create its own intra-agency appeal process. OCGA § 50-27-74. "Under the GLC Rules, after a hearing officer issues an executive order applying the COAM

laws, an aggrieved party seeking relief must follow a two-step appeal procedure within the GLC that involves requesting reconsideration from the hearing officer and then moving for review by the GLC's president/CEO." *Amusement Leasing, Inc.*, 352 Ga. App. at 247 (2). See also GLC 13.2.5 (1) (a) (3) ("A licensee or former licensee who is aggrieved by the Order entered by a Hearing Officer appointed under [OCGA] §50-27-102 (d), may appeal by filing a Request for Reconsideration with the [CEO] . . . no later than ten (10) days after receipt of the Order."). See also OCGA § 50-27-102 (d) (5) ("The decision of the hearing officer may be appealed to the [CEO.]"). If the CEO fails to provide a decision to either grant or deny an aggrieved party's motion for review within 30 days, the appeal is deemed denied and the hearing officer's decision is affirmed by operation of law. See GLC Rule 13.2.5 (1) (b) (4). The aggrieved party may then appeal the CEO's decision to the superior court. OCGA § 50-27-102 (d) (5) ("The decision of the [CEO] may be appealed to the Superior Court of Fulton County[.]").

The processes referenced above provide the exclusive avenue available to licensees for resolving disputes and making appeals that arise between and among them. See *Gebrekidan v. City of Clarkston*, 298 Ga. 651, 657 (3) (a) (784 SE2d 373) (2016) ("In sum, the COAM Laws . . . establish by general laws precisely the sort of

comprehensive statutory scheme regulating a subject—COAMs and COAM businesses—on a statewide basis[.]"). Failure to follow the statutory framework for addressing claims between and among licensees, including the administrative processes mandated by the code, will result in failure for the aggrieved party. See *Amazing Amusements Group, Inc*., 353 Ga. App. at 261 (the legislature authorized the GLC to establish the intra-agency appeal and the COAM laws create this authority without limitation as to the exclusivity of the administrative remedy).

2. With these guiding principles in mind, our decision today is predicated on two opinions this Court has issued while this appeal has been pending. First, in *Ultra Group of Companies, Inc. v. Inam Intl., Inc.,* 354 Ga. App. 304 (840 SE2d 708) (2020), we upheld the superior court's dismissal of Ultra Group's petition for certiorari seeking review of a GLC hearing officer's ruling in a COAM dispute because Ultra Group had failed to compel an answer, as well as secure the certified record, from the GLC, which was a necessary and proper respondent in the action. See 354 Ga. App. at 305-306 (1). We reasoned that Ultra Group could not "circumvent" the administrative review process by failing to secure an answer and a certified record from the GLC. Id. at 306 (1). See also, e.g., *Amazing Amusement Group, Inc.*, 353 Ga. App. at 261 (a party may not "avoid" the GLC's "intra-agency

appeal process."). In the second case, *King Petro, Inc. v. Ultra Group of Companies, Inc.*, 355 Ga. App. 503, 505 (1) (844 SE2d 547) (2020), we held that the superior court was required to dismiss Ultra Group's petition for a writ of certiorari to review a GLC decision because Ultra Group failed to name the GLC as a party. More specifically, because the GLC was the "judicatory body" that made the decision, it was necessarily the respondent in the action brought in the superior court. Id. See also *City of Sandy Springs Bd. of Appeals v. Traton Homes, LLC*, 341 Ga. App. 551, 557 (2) (801 SE2d 599) (2017) (the judicatory party is the respondent).

The appeal at bar is postured differently from the above-referenced cases insofar as Coin-Op did not file a petition for certiorari in the superior court per OCGA § 5-4-1 (a),[3] but rather filed a petition to vacate pursuant to OCGA § 9-9-13.[4] However, it is clear from the record that the dispute between Coin-Op, a master

---

[3] OCGA § 5-4-1 (a) provides in pertinent part that "[t]he writ of certiorari shall lie for the correction of errors committed by any inferior judicatory. . . exercising judicial powers[.]"

[4] Coin-Op filed the petition to vacate pursuant to OCGA § 9-9-13 (a), which is part of Georgia's arbitration code, and provides in pertinent part that "[a]n application to vacate an award shall be made to the court within three months after delivery of a copy of the award to the applicant."

licensee,[5] and Norcross Convenience, a location owner,[6] is governed exclusively by GLC through implementing statutes and GLC's rules and regulations which establish how decisions are contested and appealed.[7] In enacting the comprehensive COAM Laws, we can presume that the General Assembly understood that by authorizing GLC to establish the rules and regulations by which to resolve disputes under OCGA § 50-27-102 (d), GLC would exercise quasi-judicial powers. See *Housing Auth. of City of Augusta v. Gould*, 305 Ga. 545, 550 (1) (826 SE2d 107) (2019) ("[T]he performance of judicial acts under authority conferred upon other persons, boards, or tribunals is quasi-judicial."). The Supreme Court of Georgia explained that "the

---

[5] OCGA § 50-27-70 (b) (10) ("'Master license'" means the certificate which every owner of a bona fide coin operated amusement machine must purchase and display in the owner's or operator's place of business where the machine is located for commercial use by the public for play in order to legally operate the machine in the state."). See also OCGA § 50-27-70 (b). (10.1) ("'Master licensee'" means any person that has lawfully applied for and received a master license.").

[6] OCGA § 50-27-70 (b) (6) ("'Location license'" means the initial and annually renewed license which every location owner or location operator must purchase and display in the location where one or more bona fide coin operated amusement machines are available for commercial use by the public for play in order to operate legally any such machine in this state.").
See also OCGA § 50-27-70 (b) (8) ("'Location owner or location operator' means an owner or operator of a business where one or more bona fide coin operated amusement machines are available for commercial use and play by the public.").

[7] See OCGA § 50-27-102 (d) (3)-(5).

9

superior courts have jurisdiction to review by writ of certiorari under OCGA § 5-4-1

. . . the judicial decisions of inferior courts. . . [including] the quasi-judicial decisions

of other instrumentalities and officers of state and local government."*Gould*, 305 Ga.

at 545.


And, just as in *Ultra Group of Companies, Inc.* and *King Petro, Inc.,* the record

indicates that Coin-Op's appeal to the superior court is not in accordance with the

GLC's administrative review process. Because the GLC was the quasi-judicial body

that made the decision under review by the superior court, Coin-Op was required to

name the GLC, the respondent, as a party. As a result of Coin-op's avoidance of the

GLC's procedure, the superior court did not notify the GLC to send a certified record[8]

---

[8] See OCGA § 5-4-3 provides in pertinent part:
[I]t shall be the duty of the clerk to issue a writ of certiorari, directed to the tribunal . . . whose decision or judgment is the subject matter of complaint, requiring the tribunal . . . to certify and send up all the proceedings in the case to the superior court, as directed in the writ of certiorari.

or require GLC to file an answer.[9] Additionally, the fact that the GLC was not named as a respondent and did not participate in the proceedings in the superior court creates the same problem we were concerned with in *Ultra Group of Companies* and *King Petro* – namely, the avoidance of the administrative processes and decision-making of the "judicatory body" that issued the ruling being challenged. Thus, pretermitting whether a motion to vacate under OCGA § 9-9-13 was the proper means to seek review of a GLC decision,[10] the GLC should have been named as a respondent for *any* proceeding in the superior court that sought review of the GLC's actions as part of its statutory oversight of COAMs. Accordingly, we must vacate the judgment of the superior court and remand the case with direction for the superior court to hold further proceedings consistent with this opinion.

---

[9] See OCGA § 5-4-7 ("The answer to the writ of certiorari shall be filed in the clerk's office within 30 days after service thereof on the respondent[.]")

[10] Several cases in this context have been pursued in the superior court via a petition for a writ of certiorari under OCGA § 5-4-1 (a), see *Ultra Group of Companies*, 354 Ga. App. at 304 (petition for a writ of certiorari); *King Petro, Inc.*, 355 Ga. App. at 504 (petition for a writ of certiorari); *Amazing Amusements Groups, Inc.*, 353 Ga. at 256 (petition for a writ of certiorari); or pursued as a nondescript petition for judicial review, see *Ga. Lottery Corp. v. Tabletop Media, LLC*, 346 Ga. App. 498, 498 (816 SE2d 438) (2018) (petition for judicial review). But see *Ultra Group of Companies, Inc. v. Alli*, 352 Ga. App. 71, 72 (833 SE2d 751) (2019) (motion to confirm arbitration award).

11

2. Inasmuch as we have determined that the judgment of the trial court must be vacated, we do not reach the merits of any allegations of error raised on appeal. See *King Petro, Inc.*, 355 Ga. App. at 507 (2).

*Judgment vacated and remanded. Miller, P. J., and Mercier, J., concur in judgment only.*